Good morning. May it please the court. My name is Heather Quick and I represent the defendant, Paris Hollingshed. A jury convicted Mr. Hollingshed of possession of a firearm. At issue on appeal is testimony and evidence introduced through Detective Butt that an unnamed person who did not testify at trial identified Mr. Hollingshed as an individual who possessed a firearm in the street. This testimony and evidence was a violation of Mr. Hollingshed's right to confrontation and is an inadmissible hearsay. Reverse and remand for a new trial is required. The only issue as to whether this evidence is admissible or not based on the briefing is whether this is hearsay. The government puts forward several arguments as to why this is not hearsay as it was not offered for its truth and also asserts waiver. Every argument put forward by the government has been rejected by this court under similar circumstances. First, the government asserts that the admission of this evidence was proper because it was not offered for its truth because it was necessary to clarify an issue brought forward by defense counsel on cross-examination. That's not applicable under the circumstances of this case. Here, the government first brought out the issue of the eyewitness identification of Mr. Hollingshed as the person in the street with the firearm. Defense counsel did cross-examine on that identification in the street. Then on a redirect, the government introduced the evidence of the later lineup where the unnamed eyewitness identified Mr. Hollingshed as the individual with the firearm in the street. Counsel, is it possible that the court committed some error in admitting evidence that perhaps should not have been but that ultimately it was harmless? No, Your Honor. There's enough other evidence here to establish the appellant's guilt. No, Your Honor. There is not. What's most instructive is the Riley case out of Illinois. That's the plain error case cited in our brief as this is a plain error argument. There, in that case, there was an out-of-court identification of the defendant as the robber, but also there was another individual who identified the defendant as a robber who actually testified at trial and was subject to cross-examination. There, the Illinois Supreme Court still reversed under plain error, finding that this was such an important right that was violated that a new trial was required. And in Holmes, which is a very similar setup and circumstances to the facts here, the court didn't find a harmless error because the court noted there was contradictory evidence. The court noted that there was some evidence to indicate there was whether . . . the fighting issue in that trial was whether the government could show a connection to the house where firearms were found and which were the basis for the conviction. But still, the court noted that there was contradictory evidence. And in those circumstances, the harmless error wasn't . . . Your issue with Holmes, which I agree is a very relevant authority, but the problem for you with Holmes is the harmless error discussion being so difficult in court. It makes the plain error argument very difficult for you. That is the difficult part of the argument, but it's established in this case. It's not addressed very much either. Yes. Here, the only . . . there is not, in other cases as there were, there is not other identification, as Mr. Hollings said, as the individual who possessed a firearm. And the firearm that was the count of was not found in such a . . . in a place or in such a way that his knowledge can be inferred. It was found outside, hidden in the bushes. His fingerprints were not found on the firearm. Under plain error, though, isn't it your burden to show a probable impact on the verdict? It is, Your Honor. And the fact that the evidence that the government put forward was too weak establishes that there is plain error. There was a witness, a defense witness, who came on and that she . . . Of course, talking about the plain error . . . the plain error question with respect to the government's hearsay argument, particularly the open-door issue. The open-door issue analysis in Holmes is very precise, talks about the heavy burdens to prove and disprove waiver, suggests that if the defendant or if the victim of the hearsay doesn't raise this in district court, it's never going to be plain error because . . . if there's an open-door issue, because the analysis is so intricate, if you will. So what's your response to that? In Holmes, I think it was a closer question of opening the door because it did come out on cross-examination of what's the basis for your information, which again was a close question to whether that opened the door for the law enforcement officer to get into the basis for that information, which was the search warrant affidavit. Here, it's not a question of defense counsel opening the door. The government first brought out that evidence as to the eyewitness identification. And Durham makes clear that the government cannot open the door to inject prejudice into the trial and to admit otherwise inadmissible evidence. That depends on exactly what the government witness was asked. That doesn't come very clear, didn't come very clear to me in the briefs and I guess I should have gone and read it. But the question was . . . well, the witness was asked on cross what the son told the officers about why he called and talked to the son the next day. So there is a reference to next day coming in and confirming details that were from the 911 call. We don't have a colloquy like there was in one . . . maybe not Holmes, but the case it relied on where there was a sidebar and a counsel said, well, if I'm correct, it's in there. Yes. Okay, then it's an easy case. Yes. And then Holmes points out it's not . . . if you don't have that colloquy, it's not an easy case at all. Right. And so here that the trial court didn't have the benefit or the provocation, if you will, of an objection. So how can it be plain error for the trial court not to step in and sue his body? It's plain error because of the case law from the circuit and Holmes was decided before this trial. It indicates that as other cases of this court had said before, when we're talking about the right to confrontation and potential waiver, that's an incredibly high bar. I don't think the . . . I don't know that the government really needed the hearsay for its case. I mean, if the issue comes out, then it's probably going to go away or if it doesn't go away, then the son will be called. So it's not in the record . . . If the son was subpoenaed, he was there, right? It's not in the record why he wasn't called. But isn't it a fair inference that if it had been necessary, he would have been called? There's another reason he was not called, Your Honor, and that's not in the record and I acknowledge that. I can't get into that. There's always reasons for why witnesses are and aren't there, or who are there, are called. I guess the other thing, am I correct that this issue does not impinge on the other conviction for the April . . . He was acquitted of the count one, I believe, Your Honor. There was two counts of being . . . Okay. No, you're right. Okay, he was acquitted of the arrest in Illinois. That's correct, Your Honor. So this is the only conviction that . . . and it's going to the harmless error argument and the concerns of whether this does require reversal under plain error. The acquittal supports that some of that confidential informant's testimony could arguably be used to go to count two, the count that Mr. Hong said was eventually convicted under. But that acquittal and the problems with that confidential informant's testimony indicated that it was not credible and could not be used . . . and should not be used by this court to find harmless error when there is such a blatant violation of Mr. Hollingshead's right to confrontation and quite clearly inadmissible, you're saying. It wouldn't be so blatant a right if there was actual strategy that went into the determination as to whether to, in essence, open the door to the evidence. Yes. It was not a strategic decision in this case, Your Honor. I think defense counsel's belief was always that the eyewitness was supposed to testify and for reasons he did not, not simply because this lineup eventually came in through another eyewitness. And so defense counsel was operating under the assumption that this identification, this eyewitness was going to testify. And so, of course, the initial strategic pursuit of advocacy was that this lineup or this identification should not come in at all. And when, at the point, it became clear with the pretrial motions and the motion to suppress that this identification would come in, that then the next line of defense was let's try and attack this eyewitness identification as much as we can. That's when the discussion of the expert testimony potentially coming in came into play. I don't understand the basis for the idea of we want this very as the person with the firearm to come in so that I can attack it and somehow weaken the government's case. I think what it was, and as acknowledged in the reply brief, defense counsel simply just did not know at the time that the eyewitness was not going to testify, which is arguably why she didn't object, not for tactical reasons, but just mistaken belief at that time. There are no further questions. I would reserve the remainder of my time for rebuttal. Thank you. Thank you, Mr. Quick. Ms. Zeringer? Good morning. May it please the Court, I'm Melissa Zeringer on behalf of the government. The admission of the testimony of Detective Butt regarding the concerned citizen's identification is not plain error. The defendant cannot establish prejudice in this particular case. The defendant cannot establish that the testimony affected the substantial rights of the defendant. There's no prejudice because there's adequate independent evidence to support the conviction that the defendant knowingly possessed the firearm, which was ultimately the only issue at trial due to the stipulation as to the other two elements of the charge. The facts of this case are very specific. The evidence showing overwhelming guilt as to the defendant's possession of the firearm on August 20th. We have a search warrant that was conducted . . . But there were other people who might have put it in the bushes. We have two individuals living at the residence, that being the defendant and his girlfriend and some children. The evidence suggests that the defendant's fingerprint was found on a vacuum sealer. The firearm that was found in the bushes was in a vacuum seal bag. Matching up the remnants from the vacuum sealer to the weapon show that they were cut from that same piece of plastic. So that is very significant evidence. But it's not overwhelming, is it? I mean, he may have sealed up a piece of meat for the freezer the two days before. That doesn't necessarily mean he sealed up the gun. Well, the evidence would show that, in fact, there was no items in the refrigerator or freezer that had any sealing to it. They took pictures and looked throughout the cabinets. They moved it from one cabinet to another cabinet. I understand. Additionally, though, there was testimony regarding another firearm box that was found in the rafters of the basement. There was also evidence of the... That doesn't match the gun that was found, right? Correct. It was a different caliber gun in the rafters, which goes to the testimony of the cooperator who we had in this case, Mr. Breg. Tell me, what did Detective Butts testify to on direct? So on direct examination, the only thing that Detective Butts testified to was the fact that two 911 calls came into dispatch and that he received information regarding a description of an individual, what he was wearing, and that he had a firearm in his waistband. The detective then relied on that information and got a search warrant for the residence. That was the only testimony on direct examination. It was then in cross-examination that the defense attorney went into the other 911 call, which was from the defendant's mother, regarding a disturbance, and there was a simultaneous call that came in from our concerned citizen's mother regarding that description. During the testimony regarding those phone calls, the defense attorney got into more discussion. The concerned citizen also suggested that it was a 9mm firearm. The defense attorney then goes into more discussion regarding bringing back to the concerned citizen the following day to go over again his description of this individual. The topic of the second interview with the concerned citizen was not put into evidence in direct examination. That new topic only came up in the cross-examination. She went into detail again with the second interview, getting descriptors from the concerned citizen as to what that subject was wearing. These details, again, were not in direct examination. We then went in redirect to clarify some of those issues that were talked about on cross-examination. Was there any challenge to the warrant search before that trial? As to the search warrants? Yes. No. No, they didn't challenge these. I mean, when Butts is just explaining the basis for the warrant, was his affidavit in evidence? No. No. He just simply said, we presented that evidence to show what steps he took after getting that information from the 911 call. What was there in his direct exam that would add to the government's proof that the gun found in the bushes on an uncontested warrant search was possessed or owned by a defendant? The information relied on by Detective Butts to get the search warrant was the concerned white vehicle in the area, and following that vehicle to the defendant's residence, he then identified the individual as the defendant, who had a similar colored shirt on and a hat as described by the concerned citizen. The person that got out of the car at the residence? Yes. The detective then got a search warrant based on that information from the concerned citizen, the surveillance he conducted, as well as the information obtained from the proper interview of the cooperating defendant regarding the prior incident. He then gets the search warrant for the residence, and that's all that was brought up during direct examination. It was a very brief description of the events and the information provided by the concerned citizen, very narrow, specific questions, and it wasn't until the defense attorney entered into the new subject regarding the second interview with the concerned citizen did the information come out regarding the additional details from that individual. In looking at the sequence of the testimony, we see that the defense attorney did open the door to that additional information bringing up that second interview. I would also point out that, again, the facts of the case are overwhelming as to the possession of the weapon in the defendant's residence. I would also state that the information from the concerned citizen, those statements are not necessarily significant to the case. We see that in opening argument, the government merely stated the information that was brought out on direct examination, the information that the detective used in order to conduct surveillance and then get the search warrant. The defense did not bring any statements up in opening statement. In closing argument, the government indicated that the concerned citizen did provide this information. The detective corroborated some of that information when he followed that individual to the residence. Does the record reflect whether the government knew at the time of Detective Butts' redirect that the witness would not be called? The record suggests that at the time that Detective Butts was called, we had not made a determination on whether that witness would be testifying. It was only until after that time that the government made that decision regarding not to call the concerned citizen. The redirect was highly risky. I'm sorry? The redirect was highly risky. It was our impression that the defense attorney . . . If there was any doubt that the witness would not be called, you shouldn't have done the redirect. I said, you, obviously. That's not personal. I understand. It's our opinion that the defense opened the door to allow that testimony to clear up the information that was brought up. He didn't say on cross that the son in the interview identified the defendant, did he? Not in the lineup. No, that came out only on redirect. It was in . . . If you're not sure, again, you, I don't . . . If the government's not sure that the eyewitness is going to be called, then it shouldn't put this kind of hearsay in. It's, okay, I'll defer this evidence until we make our final decision. Then if the witness is not going to be called, then you can recall Detective Butts and see if you can get it in. Right. It was our decision. Why shouldn't we? Well, given the government's . . . It seems to me that's a tactical blunder. Why doesn't it warrant a new trial? We believe that the defense had opened the door and that the government then presented evidence to . . . If we decide the government, the defense did not open the door. I would say even so, even if you determine that the district court did commit error, it doesn't rise to the level of plain error. There are significant facts in this case . . . Why not? Because there are significant facts in this case outside of that statement. I would also say . . . Wait, wait, wait. I don't understand. I don't understand why the court shouldn't say, wait a minute. Are you going to call the witness that you're now putting in hearsay identification evidence? Well, I would just state that those statements become more insignificant when the defense attorney put testimony on from the defendant's mother regarding her 911 call. This is a defense case. Correct. Correct. Well, then it's got to defend against the unconstitutional evidence. Evidence that is perhaps unconstitutional. That goes to our . . . That may be a harmless error argument, but it doesn't get to the plain error analysis of the contemporaneous evidentiary situation. I don't understand why the government would take a risk like this. It seems to me that the Crawford cases are sufficiently clear that probably the district court should have caught it, except the district court was doubtless expecting. I don't know what the pretrial disclosure of likely witnesses was. Everybody's probably expecting the government to make the decision, but then after it gets the incriminating evidence in, oh, we don't need the witness. That seems to me, let's have a new trial. Well, I would say that when the defense attorney opens the door and suggests to the jury that the information that the detective is relying on to ask for a search warrant, it's at that time that we have to show that, in fact, this information wasn't some absurd information, that it was reliable information that he relied on in order to get the search warrant for the residence. But the search warrant wasn't an issue. That is correct. The search warrant wasn't contested. The identification was the issue. When the defense attorney brings up questions regarding the detective's use of this information from the concerned citizen, we are showing that he's relying on this information to progress his investigative techniques. Oh. Oh. All right. Well, Holmes destroys that argument. Well, I would say that Holmes is distinguishable in a couple manners. Yeah, but it destroys that progressive investigation argument, and you probably knew it when you wrote ... You, again, the government probably knew that when it wrote the brief. I would say that Holmes is distinguishable, as you said, in a couple areas. Certainly there was an objection to the information, but also in Holmes they went further than in our particular case. In the Holmes case, the officer testified regarding an entire statement of the confidential informant's dealings with that defendant prior to the incident. Here we have just the concerned citizen's testimony. Here we have ... Here you brought out the incriminating. The only thing that mattered. The only thing in this particular case is the one-time citing of the defendant. There's more information that was provided in the Holmes case as far as that defendant. It was a prior, all the information regarding his drug dealing and gun toting. However, in this particular case, we have just the one-time viewing. I would say, in any respect, the defendant cannot establish prejudice. Certainly it's their burden at this time regarding plain error. The government submits that there are facts in this case to prove that the defendant knowingly possessed this firearm. The testimony from the defendant's girlfriend, who claims responsibility for this weapon, her testimony is not credible at all. If you read the record, you see that she talks about certain aspects of the gun. However, she indicates that she put the gun out of a different window, suggesting that she knows some of the facts of the case, but didn't get specifics. Counsel, if I may, your time's almost expired, and I would like to inquire into this area of the supervised release conditions. They weren't addressed on the opening by the appellant, but what's the justification for the imposition of these conditions for behaviors that are, in one instance, well over 20 years, in another, nearly 20 years? And why are they appropriate sentencing features? The judge considered the information regarding the pre-sentence report, and I know we have a conviction for a trespass. However, the information underlying that shows his propensity to violence and domestic issues. So looking at not only- What is that propensity for now? I think that the- And subsequent to a sentence for the current charge. The information in the pre-sentence report just showed a pattern of conduct by the defendants, and the judge evaluated that information and found that, in fact, those conditions were valid. They are not much of a burden on the defendant. Certainly, there are classes that he should take, but they're not restricting his movement in anything. So the conditions are less than some other constraints that the court could put on the defendant, and they are supported by the information within the pre-sentence report. Thank you, counsel. Thank you. Ms. Quick, your rebuttal. The government's argument on opening the door begins with a false assumption, and that the testimony was detective but testify that there was a concerned citizen who, actually it was not the eyewitness, his mother called 9-1-1 to report a firearm in the street. And that this was acceptable testimony because it showed the law enforcement officer's investigation on how they got to the search warrant. But that evidence itself is inadmissible because, as Holmes makes clear, that's not an exception to the hearsay rule just to show the scope of a police officer's investigation and how they got where they got. If that were the case, that exception would completely swallow the hearsay rule. So here the government is trying to rely on improper evidence to say that defense counsel cross-examining on that evidence somehow opened the door to further more prejudicial evidence. The cross-examination, it puts defense counsel in a position where that evidence has come out. And not only was it testimony that Mr. Hollings said it was the person with the firearm, but then Detective Butt further testifies that they followed a car that generally matched that description, and it was Paris Hollings said. And he identified that person as Paris Hollings said. Isn't it fairly clear here, though, that perhaps mistakenly defense counsel had a strategy? And the strategy was that they were anticipating that French was going to testify and could then begin right away taking shots at this lineup with Detective Butts' testimony. And isn't that a fair reading of a strategy that was going on in sort of a knowing waiver in this situation? I think it shows the strategy, but it does not show a knowing waiver. Because that strategy decision was based off of the false belief that this eyewitness was actually going to be testified. So- But, okay. To say that- Mistaken, I agree. But it doesn't establish a knowing tactical waiver to say that, okay, this is hearsay and it's- Just because it's based on a mistaken assumption that the government's going to call French. Yes, that's our position that it can't- Therefore, it's not knowing. Yes, that is our position. That it was a tactical decision based on a mistaken belief, maybe at the time. And it put the defense counsel in a position of what else was that defense attorney supposed to do? This evidence came in and would lead the jury to the logical conclusion that Mr. Hollings said was the person with the firearm in the street. So the defense attorney attempted to cross-examine on that specific testimony that was brought out. So it's either cross-examine and try to limit the prejudicial impact of that testimony or let it stand. And then the jury's just going to infer that that was Mr. Hollings said because Detective Butt also testified that we found someone generally matching this description and he had a firearm. So no, it could have been a strategic decision at the time, but it was mistaken. And because it was mistaken, it was not a knowing and intentional waiver. And I want to, I didn't hit at this point in opening, but I want to hit at that it was used in closing. This identification was used in closing, which again goes to the prejudicial impact and refutes any idea that this was not offered for its truth. Because in closing arguments, the government first begins to discuss the only element is knowing possession. And then goes into here's the evidence of knowing possession. And then discusses the eyewitness identification and the lineup. So it was used for its truth. It was used as part of closing, which illustrates the impact that it had. And briefly just to address the supervised release conditions, these are two conditions, two separate conditions that deal with treatment requirements based again on convictions that were over ten years old. And I pointed to the Kent case where that was only one condition. And that was based on a 13-year-old conviction, a domestic abuse conviction. And since then, the court noted there that him and his spouse has reconciled. Here, since his prior convictions, Mr. Hollings had gone under treatment for mental health issues. So not only is there a long period of time, there's also treatment intervening in between that. If there are no further questions, I'm going to ask this court to reverse and remand for a new trial. Thank you. Thank you, Ms. Quick. Thank you also, Ms. Zerringer. We appreciate the presence of both counsel this morning. The argument you've provided to the court and the briefing you've submitted will take your case under advisement. Madam Clerk, I believe that concludes our argument calendar for the morning.